NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| VINCENT PISCIOTTA, | : | Civ. Action No. 21-20573 (RMB) |
| Petitioner | : |  |
| v. | : | **OPINION** |
| LAMINE N'DIAYE, | : |  |
| Respondent | : |  |

BUMB, Chief United States District Judge

This matter comes before the Court upon Petitioner Vincent Pisciotta's ("Petitioner") petition for a writ of habeas corpus ("Petition") under 28 U.S.C. § 2241, alleging due process violations in connection with a prison disciplinary hearing in the Federal Bureau of Prisons ("BOP"). (Pet., Dkt. No. 1.) Also before the Court is Respondent's answer in opposition to habeas relief (Answer, Dkt. No. 4), and Petitioner's reply brief. (Reply Brief, Dkt. No. 5.) For the reasons set forth below, the Court denies the petition for writ of habeas corpus.

I.  REQUEST FOR DISCOVERY

In his Petition, Petitioner requests the following discovery:

- Request #1) This Court subpoena and provide Plaintiff with his medical records compiled by medical staff at the local hospital for November 7-8, 2020 to further document and verify the extent of his injuries.

- Request #2) This Court subpoena and provide Plaintiff the medical records of inmate Aaron Hobbs, inmate number 77715-061 to provide a comparison of injuries obtained during the alleged incident on November 7, 2020.

- Request #3) This Court to subpoena and provide photos of Plaintiff and inmate Hobbs taken just after the alleged incident on November 7, 2020 by BOP staff

and referenced in the [Discipline Hearing Officer ("DHO")] report.

- Request #4) This Court subpoena the BOP personnel records of DHO K. Hampton to inform this Court of Hampton's ties to [Federal Correction Institution at Fort Dix in New Jersey ("FCI Fort Dix")], prior to positions held, and other information that undermine K. Hampton's independence as DHO.

- Request #5) This Court to subpoena DHO K. Hampton's union membership status from the appropriate labor union that represents correctional officers at FCI Fort Dix (referred to colloquially as "the Union") to determine DHO Hampton's ties to a "larger controlling unit" that affects his independence.

(Pet., Dkt. No. 1-2 at 18-19.) This Court notes that the supporting documents to Respondent's answer include the documents Petitioner seeks in Requests # 1 and # 3. (*See* Declaration of Keith Hampton[1] ("Hampton Decl."), Ex. 1, Dkt. No. 4-2 at 11-27.) Respondent's answer and supporting documents demonstrate that discovery of the additional materials requested by Plaintiff could not change the result of this proceeding. *See Chambers v. Sec'y Pennsylvania Dep't of Corr.*, 442 F. App'x 650, 656 (3d Cir. 2011) (affirming habeas court's denial of discovery request where forensics would not demonstrate that the petitioner was entitled to relief). The Court denies Petitioner's discovery requests for lack of good cause shown, as discussed in the merits of the petition below.

II. BACKGROUND

    A. The Incident Report

Petitioner is a federal inmate incarcerated at FCI Fort Dix (Declaration of Corrie Dobovich[2] ("Dobovich Decl."), Ex. 1, Dkt. No. 4-1 at 5.) Officer Rego described the alleged prison rule infraction in Incident Report #3448368 as follows:

> On November 7, 2020, I Officer Rego was assigned to unit 5703

---

[1] Keith Hampton is a DHO employed with the BOP, FCI Fort Dix, and has access to BOP files maintained in the ordinary court of business. (Hampton Decl. ¶¶ 2-3.)
[2] Corrie Dobovich is a Legal Assistant with the BOP, FCI Fort Dix, and has access to BOP files maintained in the ordinary course of business. (Dobovich Decl. ¶ 1.)

> as the housing unit officer. At approximately 7:29 pm, I was conducting an irregular round on the third floor of unit 5703 when I observed a crowd of inmates gathered in the hallway. I ordered the inmates to clear the hallway which they complied. I then [] observed two inmates (later identified via truscope as Hobbs, Aaron 77715061 and Pisciotta, Vincent 23174045) on the ground physically fighting with each other in between room 322 and 321. The inmates were striking each other with closed fists. Inmate Pisciotta had inmate Hobbs in a headlock. Both inmates were covered in blood [and] blood was on the floor and on the walls. I gave the two inmate[s] a direct order to seize their actions. I contacted control via portable radio 192 for assistance at my location. Once additional officers arrived I gave a final direct order to the inmates to seize their actions and lay flat on their stomachs which they both complied. I told inmate Pisciotta to place his hands behind his back so that I can place him in hand restraints which he complied. Responding Officer Lopez applied hand restraints to inmate Hobbs. Compound escorted both inmates to medical for further assessment. I was not harmed throughout the duration of the altercation.

(Hampton Decl., Ex. 1, Dkt. No. 4-2 at 8.) In the incident report, Petitioner was charged with a violation of disciplinary code 201 ("Fighting with another person"). (*Id.*) *See* 28 C.F.R. § 541.3 (listing code violations in table). Code 201 is a "high severity level prohibited act." *Id.*

Petitioner received a copy of Officer Rego's incident report on November 8, 2020. (Hampton Decl., Ex. 1, Part I ¶¶ 14-16, Dkt. No. 4-2 at 8.) That same day, the investigation of the incident was conducted by Lieutenant Condit, who notified Petitioner of his rights. (*Id.*, Ex. 1, Part III ¶ 23, Dkt. No. 4-2 at 29.) Petitioner told Lieutenant Condit he had "no comment." (*Id.* ¶ 24.)

B.   UDC Review

Petitioner told the Unit Discipline Committee ("UDC") that "the other inmate came at me first. I was defending myself." (*Id.*, Ex. 1, Part II ¶ 17, Dkt. No. 4-2 at 8.) The Committee referred the charge to the DHO for further hearing. (*Id.* ¶ 18.) Petitioner acknowledged that he was provided with a written notice of his rights at a DHO hearing. (*Id.*, Ex. 1, Dkt. No. 4-

3

2 at 9.) Petitioner indicated that he did not wish to have a staff representative and did not wish to have witnesses. (*Id.*, Ex. 1, Dkt. No. 4-2 at 10.)

      B.      DHO Hearing

On November 17, 2020, DHO Keith Hampton conducted Petitioner's disciplinary hearing. (*Id.*, Ex.1, Dkt. No. 4-2 at 4-7.) Petitioner was advised of his rights and Petitioner waived his right to a staff representative. (*Id.*, Ex. 1, §§ I, II (A), Dkt. No. 4-2 at 4.) At the hearing, Petitioner did not call any witnesses or offer any evidence apart from his statement that "I was hit first, I was just defending myself, I am not guilty." (*Id.*, Ex. 1, §§ III (B), (C), Dkt. No. 4-2 at 4.) The DHO considered this statement, along with the incident report, photographs, and the medical assessments of inmate Aaron Hobbs and Petitioner. (*Id.*, Ex. 1, §§ III (B), (D), Dkt. No. 4-2 at 4-5.)

      C.      The DHO Decision

The DHO found that Petitioner violated code 201 as charged. (*Id.*, Ex. 1 § IV, Dkt. No. 4-2 at 5.) He did not believe Petitioner's denials of guilt were truthful, finding Petitioner was "unable to provide the DHO with any significant evidence, or witnesses to corroborate [his] claims that [he was] not fighting and the reporting staff member was not being truthful in describing the two of [them] engaged in mutual combat with one another." (*Id.*, Ex. 1 § V, Dkt. No. 4-2 at 6.) Instead, the DHO credited the incident report by Officer Rego and submitted medical assessment and photographs. (*Id.*) Based on his findings, the DHO imposed sanctions of disallowance of 27 days good conduct time, 30 days disciplinary segregation, and 180 days of loss of commissary privileges. (*Id.*, Ex. 1 § VI, Dkt. No. 4-2 at 7.) The DHO report was completed on November 17, 2020 and delivered to Petitioner on November 19, 2020. (*Id.*, Ex. 1 § IX, Dkt. No. 4-2 at 7.) The DHO report advised Petitioner

4

of his right to appeal the DHO's decision. (*Id.*, Ex. 1 § VIII.)

III.   DISCUSSION

    A.   The Parties' Arguments

Petitioner seeks expungement of the DHO's decision based on alleged Due Process violations, including: (1) the investigating officer performed an inadequate investigation; (2) the DHO, who was a former correctional officer at FCI Fort Dix, lacked independence and was biased in favor of other correctional officers; (3) the DHO did not allow Plaintiff to call witnesses and falsified his report stating that Plaintiff waived his right to witnesses; (4) there was insufficient evidence; and (4) the good conduct time was unjustly disallowed. (Pet., Dkt. No. 1 at 9-18.)

Respondent first contends that several of Petitioner's grounds for relief should be dismissed because he failed to exhaust them on appeal. (Answer, Dkt. No. 4 at 11-13.) Respondent also argues the petition should be denied for two reasons, Petitioner was afforded his due process rights throughout the disciplinary process, and the DHO's finding of guilt was supported by "some evidence," the applicable standard. (*Id.* at 13-25.)

    B.   Standard of Law

In *Wolff v. McDonnell*, the Supreme Court described the minimum due process required before an inmate may be sanctioned with loss of good-time credits for violating a prison rule. 418 U.S. 539, 563-71 (1974). The due process protections include (1) written notice of the charges at least twenty-four hours prior to a hearing; (2) an opportunity to call witnesses and present evidence in defense; (3) opportunity to receive assistance from an inmate representative; (4) a written statement of the evidence relied on and reasons for the disciplinary action; and (5) an appearance before an impartial decision-making body. *Wolff*,

5

418 U.S. at 563–567. The Supreme Court later held that "some evidence" is the standard of review required to affirm an inmate's finding of guilt of a prison rule infraction. *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* The standard is met if any evidence in the record could support the conclusion by the tribunal. *Id.* at 455-56.

The BOP regulations for prison disciplinary proceedings exceed the minimum due process provided in *Wolff*. See 28 C.F.R. §§ 541.1 to 541.8; *see Von Kahl v. Brennan*, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994) ("While the regulations substantially track the procedures outlined in Wolff, in some respects they go beyond what the due process clause itself requires.") (internal citations omitted). Under 28 C.F.R. § 541.5, when BOP staff have reason to believe that an inmate committed a prohibited act, the BOP must prepare an incident report and refer the matter for investigation. After an investigation, the incident report is provided to a Unit Discipline Committee pursuant to 28 C.F.R. § 541.7, for an initial hearing. A DHO hearing must be conducted pursuant to the procedures set forth at 28 C.F.R. § 541.8. The procedures require the BOP to give inmates advance written notice of the charges no less than 24 hours before the DHO hearing. 28 C.F.R. § 541.8(c). Inmates are entitled to the assistance of a staff representative for the DHO hearing. 28 C.F.R. § 541.8(d). The inmate has the right to be present throughout the DHO hearing, except during deliberation or when institutional security would be jeopardized. 28 C.F.R. § 541.8(e).

In a DHO hearing, the inmate is entitled to make a statement, present documentary evidence, and submit names of requested witnesses and have them called to testify, if reasonably available. 28 C.F.R. § 541.8(f). Once a decision has been made by the DHO, the

DHO must prepare a record of the proceedings. The record of proceedings must be sufficient to document that the inmate was advised of his rights, the DHO's findings, the specific evidence relied upon by the DHO, the sanctions imposed, the reasons for the DHO's decision and for the sanctions imposed, and the record must be delivered to the inmate. 28 C.F.R. § 541.8(h).

      C.      Exhaustion of Administrative Remedies

As an initial matter, Respondent argues that Petitioner did not exhaust his administrative remedies for several of his claims before filing this habeas petition. (Answer, Dkt. No. 4 at 11-13.) Respondent argues that Petitioner failed to raise his claims that (1) there was a lack of investigation, (2) the DHO lacked independence, and (3) DHO's decision was based on insufficient evidence, in his original appeal to the Northeast Regional Office and his appeal to the Central Office. (*Id.*) Petitioner argues that on appeal he raised the issue that his due process rights were violated by an impartial hearing officer. (Reply, Dkt. No. 5 at 6-7.) Petitioner argues that claim was a general due process claim regarding the DHO, which was meant to include the now raised additional examples of due process violations caused by the lack of impartiality on the part of the DHO. (*Id.*)

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies. *See, e.g., Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000). Exhaustion is required because: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own

errors fosters administrative autonomy." *Moscato v. Fed. Bureau of Prison*s, 98 F.3d 757, 761-62 (3d Cir. 1996). Administrative exhaustion can be excused if an attempt to obtain relief would be futile or where the purposes of exhaustion would not be served. *See Cerverizzo v. Yost*, 380 F. App'x 115, 116 (3d Cir. 2010) (citations omitted).

The BOP's administrative remedy system has several tiers allowing "an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). With respect to exhausting administrative remedies of a DHO's decision, a petitioner appeals the DHO's decision using a BP-10 form "to the Regional Director for the region where the inmate is currently located." 28 C.F.R. § 542.14(d)(2). "An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP–11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response." 28 C.F.R. § 542.15(a). "Appeal to the General Counsel is the final administrative appeal[ ]" for purposes of administratively exhausting a DHO decision. *Id.*

The is no dispute here that Petitioner did submit an appeal of the DHO's November 17, 2020 decision. Petitioner filed an appeal with both the Regional Director in the Northeast Regional Office and General Counsel in the Central Office. (*See* Dobovich Decl., Attch. C., Dkt. No. 4-1 at 15-19.) Petitioner did not explicitly raise his instant habeas claims regarding (1) the lack of investigation, (2) the DHO's bias based on his former occupation as a correctional officer, and (3) insufficiency of the evidence. (*See id.*) However, Petitioner did argue on appeal that the DHO was not impartial and had predetermined Petitioner's guilt prior to the hearing. (*See id.* at 18.) Petitioner argues this claim included the DHO's bias, lack of investigation, and failure to support his decision with sufficient evidence. (Reply, Dkt. No.

5 at 6-7.)

This Court will decline to decide this case on exhaustion grounds. Even if this Court were to conclude that Petitioner's lack of exhaustion should not be excused, in cases where a petitioner has failed to exhaust administrative remedies prior to filing a § 2241 petition, a court has discretion to either excuse the faulty exhaustion and reach the merits, or require the petition to exhaust administrative remedies before proceeding in court. *See Ridley v. Smith*, 179 F. App'x 109, 111 (3d Cir. 2006). This Court will use its discretion here to decide this case on the merits.

    D.    Analysis

        1.    <u>Whether there was an adequate investigation</u>

Petitioner argues that an inadequate investigation was performed prior to the charge being referred to the DHO for a hearing. (Pet., Dkt. No. 1-2 at 12.) Petitioner contends the investigating officer "failed to fulfill any [investigatory] questioning of witnesses as required under [Program Statement ("PS")] 5270.09 [and] [28] C.F.R. § 541.5(b)." (*Id.*) Petitioner cited to 28 C.F.R. § 541.5(b) and PS5270.09 in support of his claim.

28 C.F.R. § 541.5 addresses the inmate discipline process and provides as follow:

(a) *Incident report.* The discipline process starts when staff witness or reasonably believe that you committed a prohibited act. A staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing. You will ordinarily receive the incident report within 24 hours of staff becoming aware of your involvement in the incident.

(b) *Investigation.* After you receive an incident report, a Bureau staff member will investigate it.

    (1) *Information:* The investigator will specifically inform you:

        (A) of the charge(s) against you; and

> (B) that you may remain silent at all stages of the discipline process, but that your silence may be used to draw an adverse inference against you at any stage of the process. Your silence alone, however, cannot be the basis for finding you committed the prohibited act(s).
>
> (2) *Statement:* When the investigator asks for your statement, you may give an explanation of the incident, request any witnesses be interviewed, or request that other evidence be obtained and reviewed. However, the staff investigation of the incident report may be suspended before requesting your statement if it is being investigated for possible criminal prosecution.
>
> (3) *Informally resolving the incident report.* The incident report may be informally resolved at any stage of the disciplinary process, except for prohibited acts in the Greatest and High severity levels, or as otherwise required by law or these regulations. If the incident report is informally resolved, it will be removed from your records.

28 C.F.R. § 541.5.

BOP Program Statement 5270.09 provides further guidance to BOP staff, stating:

> The investigator then talks to persons with direct and relevant information, and summarizes their statements. (For example, if an inmate was in a fight, the investigator talks with the other inmate(s) involved.) Often, the investigator will want to talk to the reporting employee to obtain a report firsthand and to clarify any questions. Although an inmate may not identify or request any witnesses at this stage of the discipline process, the investigator should interview any witnesses to the incident (and victims, if applicable) to record their statements. The investigator records the disposition of evidence.[3]

Petitioner argues that because PS 5270.09 provides that the investigator should interview any witness to the incident, and the investigator did not interview possible inmate witnesses, the investigation was insufficient. (Pet., Dkt. No. 1-2 at 11-12.) Petitioner's reply

---

[3] Available at https://www.bop.gov/PublicInfo/execute/policysearch?todo=query&series=5000 (last visited April 24, 2023).

10

brief argues that this inadequate investigation violated his due process rights. (Reply Brief, Dkt. No. 5 at 8-9.)

Respondent argues that the investigating officer took the steps required to investigate a disciplinary report. (Answer, Dkt. No. 4 at 16-17.) Respondent submits that Officer Rego, the officer who wrote the incident report, was a first-hand witness to the fight between Petitioner and inmate Hobbs. (*Id.* at 16, citing Hampton Decl., Ex. 1, Part I, Dkt. No. 4-2 at 8.) Respondent cites to the incident report which indicates that Officer Rego witnessed Petitioner holding inmate Hobbs in a headlock and both inmates were punching each other with closed fists. (*Id.*) Officer Rego turned the matter over to the investigating officer, Lieutenant Condit, who reviewed the incident report. (*Id.*, citing Hampton Decl., Ex. 1, Part III, Dkt. No. 4-2 at 29.) Respondent notes Lieutenant Condit also permitted Petitioner to make a statement during the investigation, to which Petitioner responded, "No comment." (*Id.*) Respondent contends Lieutenant Condit took all of the steps required to investigate a disciplinary report. (Answer, Dkt. No. 4 at 16.) Respondent claims *Wolff* does not require a comprehensive investigation and Petitioner's due process rights were not violated. (*Id.* at 16-17.)

Petitioner does not have a due process right to an adequate prehearing investigation. *Moles v. Holt*, 221 F. App'x 92, 95 (3d Cir. 2007). Prison regulations are "primarily designed to guide correctional officials in the administration of a prison. [They are] not designed to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481–82 (1995). Where a liberty or property interest has been infringed, the process which is due under the United States Constitution is that measured by the due process clause, not prison regulations. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 539–41 (1985) ("[O]nce it is determined that the Due

11

Process Clause applies, the question remains what process is due. The answer to that question is not to be found in the [state] statute.") (quotation and citation omitted). "A habeas claim under § 2241 cannot be sustained based solely on the BOP's alleged violation of its own Program Statements inasmuch as the Program Statements are not mandated by statute or the Constitution. . . ." *Sepulveda v. Warden Canaan USP*, 645 F. App'x 115, 118 n. 2 (3d Cir. 2016) (citing *e.g.*, *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011)). *Wolff* and *Hill* do not identify an adequate prehearing investigation as a minimum due process protection required for an inmate during the disciplinary process. *See Moles*, 221 F. App'x at 95 ("failure to conduct a prompt and thorough investigation prior to a disciplinary hearing does not rise to the level of a due process violation."); *Whitford v. Boglino*, 63 F.3d 527, 532 (7th Cir.1995) (per curiam) ("[Plaintiff] has no federal due process right to a prehearing investigation."); *Brown v. Frey*, 889 F.2d 159, 170–71 (8th Cir.1989) (holding that prisoner had not shown any clearly established constitutional right to an adequate investigation). Petitioner fails to state due process violation and is not entitled to relief on this ground.

        2.    <u>Whether the DHO was biased</u>

Petitioner argues that the DHO was biased, and he was not an independent arbitrator because he was a former correctional officer and still affiliated with his former correctional officer colleagues. (Pet., Dkt. No. 1-2 at 12-14.) Petitioner claims this lack of independence was demonstrated by the DHO's "complete lack of skepticism over the incident in question." (*Id.* at 13.)

Petitioner is correct that 28 C.F.R. § 541.8(3)(b) requires that a DHO must be an impartial decisionmaker. The regulation, however, specifically requires only that the DHO was not a victim, witness, investigator, or otherwise significantly involved in the incident.

12

This is consistent with the Third Circuit's holding that

> the requirement of an impartial tribunal prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary body.

*Meyers v. Aldredge*, 492 F.2d 296, 306 (3d Cir. 1974). In the absence of a showing that the DHO was "personally or substantially involved in the circumstances underlying [the investigation of the] charge," courts have generally rejected due process challenges based on claims of DHO bias, *See, e.g.*, *Greer v. Hogston*, 288 F. App'x 797, 799 (3d Cir. 2008); *Edwards v. Yates*, No. 15-5780, 2016 WL 6562048, at *9 (D.N.J. Nov. 4, 2016).

Here, Petitioner's vague claim of bias does not amount to "direct personal or otherwise substantial involvement . . . in the circumstances underlying the charge," that could show that the DHO was not impartial. *Lewis v. Canaan*, 664 F. App'x 153, 156 (3d Cir. 2016) (internal quotation marks omitted); *Rodriguez v. Ebbert*, No. 15-1815, 2016 WL 3457175, at *3 (M.D. Pa. June 20, 2016) (finding that a "'generalized critique' of [DHO] impartiality is insufficient to demonstrate the degree of bias necessary to prove a due process violation").There is no evidence that DHO Hampton had any involvement in the circumstances underlying the charge. Rather, Petitioner speculates that because DHO Hampton was a correctional officer, he is biased and impartial. Therefore, Petitioner has failed to demonstrate that it violated his due process rights for Mr. Hampton to serve as DHO.

### 3. Whether Petitioner was denied witnesses

Petitioner next argues that the DHO did not allow Petitioner to call witnesses and he falsified Section III (C) of the DHO report, which indicates Petitioner waived his right to witnesses. (Pet., Dkt. No. 1-2 at 14; *see* Hampton Decl., Ex. 1 § III (C), Dkt. No. 4-2 at 4.)

Petitioner argues that there was a crowd of inmates who witnessed the incident and could have validated his innocence. (Pet., Dkt. No. 1-2 at 14.) Thus, Petitioner claims it is "illogical" that he would waive his right to call witness. (*Id.*) Respondents reply that the record supports that Petitioner had the opportunity to come forward with witnesses and opted not to. (Answer, Dkt. No. 4 at 19-22.) Respondents also argue that any witness would have been immaterial because the DHO did not sanction Petitioner with starting the fight, but for participating in a fight, which was witnessed by the reporting correctional officer. (*Id.*)

The record indicates that Petitioner declined to call witnesses on more than one occasion. Lieutenant Condit indicated in the notes of his investigation on November 8, 2020 that "Inmate Pisciotta did not ask for any witnesses[.]" (Hampton Decl., Ex. 1, Dkt. No. 4-2 at 29.) Petitioner received his notice of rights at discipline hearing on November 12, 2020. (*Id.* at 9-10.) On the notice form, it was marked that Petitioner did not wish to have witnesses. (*Id.* at 10.) There are no witnesses named or described in the space of the form for listing witnesses. (*Id.*) Petitioner's signature appears on this page of the notice form. (*Id.*) Petitioner does not appear to dispute this but argues that the DHO ignored his requests for witnesses at the hearing. (Pet., Dkt. No. 1-2 at 14.) The DHO Report also indicates that Petitioner waived his right to witnesses. (Hampton Decl., Ex. 1 § III (C), Dkt. No. 4-2 at 4.) Additionally, Petitioner declined a staff representative at the hearing. (*Id.*, Ex.1, Dkt. No. 4-2 at 10.)

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. "[T]he inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566. Here, the documented

record contradicts Petitioner's assertion that he requested witnesses for his hearing. Petitioner "did not list, request, or attempt to describe any witnesses in the paperwork he filled out prior to the hearing. In fact, he affirmatively waived the right to call witnesses." *Drabovskiy v. Allenwood*, 597 F. App'x 47, 49 (3d Cir. 2015) (per curiam). Although Petitioner argues that the DHO falsified this section of the report, Petitioner fails to name any witnesses he wished to call and there are multiple notations throughout the record that indicate Petitioner never requested witnesses. Under the specific evidence portion of the DHO Report, the DHO noted Petitioner was read his due process rights, stated he understood his rights, and did not request a witness to provide testimony of his behalf. (Hampton Decl., Ex. 1 § V, Dkt. No. 4-2 at 6.) Further, as previously noted, Petitioner declined a staff representative at the hearing, and thus waived the opportunity to have a staff representative obtain witness statements on his behalf. *See* 28 C.F.R. § 541.8(d)(2) ("the staff representative may also assist you by speaking with and scheduling witnesses, obtaining written statements, and otherwise helping you prepare evidence for presentation at the DHO's hearing.") Petitioner has failed to show that he requested and was deprived witnesses and that the DHO falsified the fact that Petitioner waived his right to present witness testimony. *See* Federal Rule of Civil Procedure 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: consider the fact undisputed for purposes of the motion;" SECT 2254 Cases Rule 1 (scope of the rules) and Rule 12 ("[t]he Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules.")

Moreover, Petitioner has failed to show he would be entitled to habeas relief even if he did request witnesses testify on his behalf at the discipline hearing. The DHO based his

15

finding upon Officer Rego's written statement. Officer Rego was an eyewitness to the incident and reported that he witnessed Petitioner and inmate Hobbs "on the ground physically fighting with each other" and they were "striking each other with closed fists." (*Id.*) Officer Rego reported he instructed the inmates seize their actions and he contacted control for assistance. (*Id.*) It was not until after additional officers arrived and Officer Rego again instructed Petitioner and inmate Hobbs to seize their actions, that they complied with the order. (*Id.*) The DHO considered photographs and medical assessments and noted that Petitioner and inmate Hobbs both sustained minor injuries consistent with being involved in a fight. (*Id.*) The DHO also considered Petitioner's statement denying fighting inmate Hobbs and his allegation that he was hit first and defending himself. (*Id.*) The DHO noted that "a 'fight' is a hostile physical or verbal encounter, or engagement between two or more persons" and found Petitioner's claim that he was not fighting with another inmate was without merit. (*Id.*) The DHO gave weight to the eyewitness reporting officer's account that Petitioner and inmate Hobbs were exchanging closed fists punches and noted that Petitioner failed to provide any significant evidence or witnesses to contradict the actions reported by Officer Rego. (*Id.*)

Even if the Court accepts that Petitioner requested witnesses to testify at his hearing, at most Petitioner claims that the witnesses would have potentially testified that inmate Hobbs started the fight. Petitioner was found guilty of committing the prohibited act of fighting, which is defined as a hostile physical or verbal encounter. (*See id.*) Officer Rego was an eyewitness to the incident and reported that Petitioner and inmate Hobbs were "striking each other with closed fists." (*Id.*) The altercation continued following Officer Rego's order that they stop, and Officer Rego had to wait for additional officers to arrive. (*Id.*) Even if Petitioner did produce a witness to give testimony that inmate Hobbs initiated the fight, the eyewitness

16

reporting officer indicated that he witnessed Petitioner punching inmate Hobbs with closed fists. The DHO did not find that Petitioner initiated the fight, rather he found the evidence supported that Petitioner was guilty of fighting. Petitioner has failed to show he was prejudiced by any failure to allow witness testimony. *See Pachtinger v. Grondolsky*, 340 F. App'x 774, 776-77 (3d Cir. 2009) (examining whether prisoner was prejudiced by alleged denial of certain evidence at disciplinary proceeding). Petitioner is not entitled to habeas relief on this claim.

    4. <u>Whether there was sufficient evidence</u>

Next, Petitioner appears to argue that the evidentiary standard the BOP is held to is insufficient. (Pet., Dkt. 1-2 at 15-18.) Petitioner claims the BOP has "carte blanche permission to rule however it (through the DHO) wishes on disciplinary matters." (*Id.* at 16.) Respondent's reply argues that the DHO's decision should be upheld because there is "some evidence" to support the decision. (Answer, Dkt. No. 4 at 22-24.) In reply, Petitioner argues that defending oneself is not a hostile act, thus he is not guilty of hostile physical encounter as required by code 201. (Reply, Dkt. No. 5 at 14.) Petitioner also requests the Court review the photographs of Petitioner and inmate Hobbs, which Petitioner argues shows the injuries to inmate Hobbs were less than those inflicted on Petitioner. (*Id.*)

To the extent that Petitioner asks this Court to reweigh the evidence, that is not the duty of this Court. Unlike a DHO hearing, this Court need not decide whether the "greater weight of the evidence" supports any particular conclusion. Instead, when reviewing a DHO's decision resulting in the loss of good time credits, federal courts will uphold that decision as long as there was "some evidence" to support the DHO's findings and decision. *Hill*, 472 U.S. at 455–56. The standard is "minimal and does not require examination of the entire record,

17

an independent assessment of the credibility of the witnesses, or a weighing of the evidence." *Lang v. Sauers*, 529 F. App'x 121, 123 (3d Cir. 2013) (per curiam) (citing *Thompson v. Owens*, 889 F.2d 500, 502 (3d Cir. 1989)). Instead, "the relevant inquiry asks whether 'there is any evidence in the record that could support the conclusion reached by the disciplinary board.'" *Id.* (quoting *Hill*, 472 U.S. at 455-56)

The DHO stated that he based his finding that Petitioner committed the prohibited act of fighting with another person, code 201, on the incident report and the photographs and medical assessments. (Hampton Decl., Ex. 1 § V, Dkt. No. 4-2 at 6.) The DHO considered that the eyewitness reporting officer indicated that he witnessed Petitioner and inmate Hobbs "striking each other with closed fists." (*Id.*) The DHO considered the photographs and medical assessments and noted that Petitioner sustained minor injuries consistent with being involved in a fight. (*Id.*) The DHO also considered Petitioner's testimony in which he denied fighting with inmate Hobbs and alleged that he was defending himself. (*Id.*) The DHO found that Petitioner was providing inaccurate information and noted that Petitioner failed to provide "evidence, or witnesses to corroborate [his] claims that [he] was not fighting and the reporting staff member was not being truthful in describing [Petitioner and inmate Hobbs] being engaged in mutual combat with one another (exchanging closed fist punches and grappling with each other)." (*Id.*) The DHO's reliance on the Incident Report and the photographs and medical assessments are sufficient to meet the "some evidence" standard required to uphold prison disciplinary sanctions. *Hill*, 472 U.S. at 457 (some evidence standard was met where "the record [was] not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.")

        5.      <u>Whether the sanction imposed was unjust</u>

Petitioner's final argument is that the sanction of disallowance of twenty-seven days good conduct time was unjust. (Pet., Dkt. No. 1-2 at 17-18.) The sanction imposed by the DHO was within the limits for a "high severity level prohibited act," according to 28 C.F.R. § 541.3(b) and Table 1. Even when the sanctions imposed exceed the "ordinary sanction," it does not violate due process when the sanctions fall within the sanctions in the applicable regulation. *See e.g.*, *Wallace v. Ebbert*, 505 F. App'x 124, 125 (3d Cir. 2012) ("nothing in Table 1 prohibited the DHO from disallowing a greater percentage of [the inmate's] good conduct time in an effort to deter him from future infractions.") Therefore, Petitioner was not denied due process due to the harshness of the sanctions imposed, and the Court denies Petitioner's final ground for relief.

## IV.    CONCLUSION

For the reasons discussed above, the Court denies Petitioner's requests for discovery and denies the petition for writ of habeas corpus under 28 U.S.C. § 1915.

An appropriate Order follows.

Date: June 1, 2023

                                          <u>s/Renée Marie Bumb</u>
                                          **RENÉE MARIE BUMB**
                                          **CHIEF UNITED STATES DISTRICT JUDGE**